# In the United States Court of Federal Claims

No. 21-1414V
(Filed Under Seal: May 28, 2025)[1]
Filed: June 26, 2025

|  |  |
|---|---|
| ISABEL ZAMORA, | ) |
| Petitioner, | ) ) ) ) |
| v. | ) ) ) |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | ) ) ) ) |
| Respondent. | ) ) ) |

## OPINION & ORDER

*Courtney Christine Jorgenson*, Siri & Glimstad, LLP, Phoenix, AZ, for petitioner.

*Naseem Kourosh*, Vaccine/Torts Branch, Civil Division, United States Department of Justice, Washington, D.C., for respondent.

### SMITH, Senior Judge

Petitioner, Ms. Isabel Zamora, who suffers from chronic fatigue syndrome that she links to an October 8, 2019, influenza vaccination, appeals Special Master Christian J. Moran's decision denying compensation under the National Vaccine Injury Compensation Program. *See generally* Motion for Review, ECF No. 87. To her, Special Master Moran's factual determinations were arbitrary and capricious under prongs one and three of *Althen v. Sec'y of Dep't of Health & Hum. Servs.*' liability evaluation. 418 F.3d 1274, 1278 (Fed. Cir. 2005). On prong one, causation, she contends that Special Master Moran applied a heightened and incorrect standard—of definitive scientific certainty—to her vaccine injury causation theory, instead of the correct preponderance of the evidence standard. *See* Memorandum in Support of Petitioner's Motion for Review at 5–6, ECF No. 88 [hereinafter Pet.'s Mem.]. For prong three, medically acceptable timeframe, she asserts that Special Master Moran incorrectly determined that Ms. Zamora's proffered expert evidence failed to establish a creditable connection between her injury and the vaccination. *Id.* at 15–17.

---

[1] This opinion was issued under seal on May 28, 2025. The parties were given an opportunity to propose redactions before public release, but no such proposals were made.

Neither argument has merit. Special Master Moran did not apply any heightened standard to Ms. Zamora. Rather, she simply failed to prove her case and is, in essence, now hoping the Court will "second guess the Special Masters fact-intensive conclusions," despite having previously had ample opportunity to use any fact, expert, and law to establish her case. *Hodges v. Sec'y of Dep't of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993). That being so, the Court affirms the below decision. Ms. Zamora's Motion for Review, ECF No. 87, is denied.

# I

On October 8, 2019, Ms. Zamora, a resident of the State of California, received the at-issue Flulaval influenza vaccination from her primary medical care physicians at Salud Para Le Gente. *See* Special Master's Decision at 2, ECF No. 85 [hereinafter Decision]. Flulaval vaccinations contain an inactive form of the influenza virus. *Id.* Soon after the vaccination, Ms. Zamora began experiencing headaches and fatigue. *Id.* at 3. Then on November 4, 2019, "everything was different": Ms. Zamora woke up to a very intense headache causing her to have a "sensation [of] being in another dimension," making her feel "dizzy, confused and scared." *Id.* (internal quotation marks and citation omitted).

After a trip to visit her mother in Mexico between November 16, 2019, to December 9, 2019, Ms. Zamora scheduled an appointment with her primary care physician on January 2, 2020, to discuss her symptoms. *Id.* At this appointment with nurse practitioner RoseMarie Sandoval, Ms. Zamora complained of headaches dizziness and blurry vision. *Id.* Nurse practitioner Sandoval diagnosed Ms. Zamora with adjustment disorder intermixed with anxiety and recommended that Ms. Zamora seek therapy. *Id.* But Ms. Zamora's headaches and fatigue did not recede—thus making work difficult—and by March 2020, during the coronavirus pandemic, she did not go to work at all. *Id.* at 3–4. In April 2020, she applied for unemployment based on the risks of contracting the coronavirus at her workplace, but was denied. *Id.* at 4. Soon after, she quit her job. *Id.* These records do not mention an illness, and she was not evaluated by any medical physicians during this period. *Id.*

In May 2020, Ms. Zamora returned to work. *Id.* But she quit her job again on June 6, 2020, because her "headaches were getting more and more intense." *Id.* (internal quotation marks and citation omitted). Moreover, her "legs and arms had no energy, [her] tongue did not have the normal movement[, and she] could talk but . . . had difficulty moving it and [her] fingers were numb." *Id.* (internal quotation marks and citation omitted). In June 2020, Ms. Zamora reapplied for benefits and the State of California's Unemployment Office approved her application; she received those benefits for "about one year." *Id.*

In June 2020, "[a]pproximately eight months after" her influenza vaccination, Ms. Zamora elected to see medical professionals again at Salud Para La Gente. *Id.* Physician assistant, Alicia Potes, evaluated Ms. Zamora. *Id.* To physician assistant Potes, Ms. Zamora reported bilateral hand cramping—and, for the first time, linked her

symptoms, of generalized headaches and fatigue, as starting after her October 2019 influenza vaccination. *Id.* At the examination, however, Ms. Zamora had normal cognitive function, despite being depressed with a flat affect. *Id.* Physician assistant Potes diagnosed Ms. Zamora with "headache syndrome, depression and pain," and referred Ms. Zamora to a neurologist. *Id.*

Over the following three months in 2020, Ms. Zamora saw a variety of medical professionals. *Id.* Relevant here is Ms. Zamora's appointment on September 26, 2020, with physician assistant Caitlin Casey, who diagnosed Ms. Zamora with chronic fatigue syndrome and supported Ms. Zamora's application of disability benefits based on this diagnosis. *Id.* at 5. On June 1, 2021, and relying on this diagnosis, Ms. Zamora petitioned for compensation under the National Vaccine Injury Compensation Program.[2] *See generally* Petition, ECF No. 1.

## II

On March 19, 2025, Special Master Moran issued his decision denying compensation to Ms. Zamora for her claim that her chronic fatigue syndrome was caused by her October 8, 2019, influenza vaccination. *See generally* Decision. In so holding, along with the petitioner's medical records, Special Master Moran reviewed both Ms. Zamora's expert, Dr. Mitchell Miglis, and respondent's expert, Dr. Roland Staud, reports. *Id.* at 1, 7–8. Ms. Zamora filed both an initial and rebuttal report written by Dr. Miglis, whereas the respondent filed one report written by Dr. Staud. *Id.* at 7–8.

**Dr. Miglis's Initial Report**. Dr. Miglis is a neurologist. *Id.* at 1. For his initial report, he reviewed Ms. Zamora's medical reports, and determined that she suffers from chronic fatigue syndrome, which originated in early October 2019, or as late as December 2019, and was likely caused by her October 8, 2019, influenza vaccination. *Id.* at 7. While uncertain about how influenza vaccinations can induce chronic fatigue syndrome, he presumes the origin is one of "molecular mimicry." *Id.* (internal quotation marks omitted).

**Dr. Staud's Expert Report**. Dr. Staud is a rheumatologist. *Id.* at 1. For his report, Dr. Staud challenged Dr. Miglis's contention that the influenza vaccination caused Ms. Zamora's chronic fatigue syndrome. *Id.* at 7. Instead, Dr. Staud points to the onset of symptoms associated with the syndrome prior to the vaccination itself. *Id.* Moreover, Dr. Staud also asserts that there is no scientifically proven connection between influenza vaccination and chronic fatigue syndrome. *Id.*

**Dr. Miglis's Rebuttal Report**. In his rebuttal report, Dr. Miglis "essentially maintained the opinions that he had expressed previously." *Id.* This report was the last expert disclosure. *Id.* at 8.

---

[2] Later in the litigation, the Ms. Zamora was given the opportunity to change her claimed injury to a claim that the influenza vaccination "significantly aggravated (as opposed to caused) her chronic fatigue syndrome," but she chose not to pursue this nudge by the Office of Special Masters. *See* Decision at 7–8.

### III

On April 16, 2025, Ms. Zamora moved for review of Special Master Moran's decision. *See generally* Motion for Review, ECF No. 87. That same day, she filed her Memorandum in Support of her Motion to Review. *See generally* Pet.'s Mot. On May 13, 2025, respondent filed its response in opposition to Ms. Zamora's Motion for Review. *See generally* Respondent's Response in Opposition to the Motion for Review, ECF No. 90 [hereinafter Resp't's Mot.]. The Court elects to issue its decision on the papers.

### IV

Under the Vaccine Act, this Court reviews a Special Master's decision upon the timely request of either party. 42 U.S.C. § 300aa-12(e)(1)–(2). In reviewing such a request, this Court may:

> (A) uphold the findings of fact and conclusions of law . . . ,
> (B) set aside any findings of fact or conclusion of law . . . found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . , or
> (C) remand the petition to the special master for further action in accordance with the court's direction.

*Id*. § 300aa-12(e)(2)(A)–(C). "Fact findings are reviewed . . . under the arbitrary and capricious standard; legal questions under the 'not in accordance with law' standard; and discretionary rulings under the abuse of discretion standard." *Munn v. Sec'y of Dep't of Health & Hum. Servs.*, 970 F.2d 863, 870 n.10 (Fed. Cir. 1992). The Court, however, cannot "substitute its judgment for that of the special master merely because it might have reached a different conclusion." *Snyder v. Sec'y of Health & Hum. Servs.*, 88 Fed. Cl. 706, 718 (2009). Instead, if a special master's decision is "based on evidence in the record that [is] not wholly implausible, [the Court is] compelled to uphold that finding as not being arbitrary or capricious," *Cedillo v. Sec'y of Health & Hum. Servs.*, 617 F.3d 1328, 1338 (Fed. Cir. 2010), because the Court will neither relitigate the factual record nor "assess whether the special master correctly evaluated the evidence, or examine the probative value of the evidence or the credibility of the witnesses," *Porter v. Sec'y of Health & Hum. Servs.*, 663 F.3d 1242, 1249 (Fed. Cir. 2011). In turn, "if the special master has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision," the Court will rarely find reversible error.
*Lampe v. Sec'y of Health & Hum. Servs.*, 219 F.3d 1357, 1360 (Fed. Cir. 2000) (internal quotation marks omitted).

V

Ms. Zamora makes two arguments in favor of reversing Special Master Moran's decision under prongs one and three of *Althen v. HHS*'s liability evaluation.  *See generally* Pet.'s Mem.  Both are meritless.

**Prong One: Causation.**   For prong one's causation analysis, Ms. Zamora asserts that Special Master Moran applied a heightened and incorrect standard—of definitive scientific certainty—to her vaccine injury causation theory, instead of the correct preponderance of the evidence standard established by *Althen*.  *See* Pet.'s Mem. at 5–6.  This assertion is simply wrong for two key reasons.

*First*, Ms. Zamora's own evidence concludes the influenza vaccination ***does not*** cause chronic fatigue syndrome; or, worse, the studies that her expert, Dr. Miglis, relied upon to support Ms. Zamora's claim did not evaluate influenza vaccination risks but rather human papilloma virus vaccination risks—and even that study "did not find an increased risk of chronic fatigue syndrome."  Decision at 9–12.  The Court will not reopen a closed record when the record clearly does not support—indeed, completely undermines—a petitioner's cause-of-action in the original forum, for the Court is always compelled to uphold a special master's decision when it is "based on evidence in the record that [is] not wholly implausible." *Cedillo*, 617 F.3d at 1338.  When a petitioner's own evidence does not support the claimed injury, it is obviously not implausible to hold that compensation for that injury is unwarranted.

*Second*, Ms. Zamora's reliance upon previous caselaw where the Office of Special Masters found that an influenza infection could cause chronic fatigue syndrome is equally unavailing because an influenza *infection* and an inactive influenza virus *vaccination*, such as the at-issue Flulaval dose, are not the same thing.  *See* Pet.'s Mem. at 6–8.  As Special Master Moran found and all the caselaw identified by Ms. Zamora confirms, influenza infections replicate and Flulaval's inactive virus does not.  Decision at 10–11.  Nor does Ms. Zamora provide any evidence to dispute the scientific and legal consensus—in fact, once again, the evidence provided by the parties "tend[s] to exonerate the [in]flu[enza] vaccine as a potential cause of chronic fatigue syndrome." *Id.* at 11.  Accordingly, by evaluating the very evidence provided by Ms. Zamora and others, Special Master Moran was holding Ms. Zamora to the minimum standard of causation; or as Special Master Moran correctly held: a "special master may properly require some empirical evidence to show that a particular vaccine can cause a particular disease." *Id.* at 13.  In no way is that standard one of heightened scientific certainty.  It is hornbook vaccine causation analysis.  *E.g.*, *Grant v. Sec'y of Dep't of Health & Hum. Servs.*, 956 F.2d 1144, 1148 (Fed. Cir. 1992) ("Causation in fact requires proof of a logical sequence of cause and effect showing that the vaccination was the reason for the injury.  *A reputable medical or scientific explanation must support this logical sequence of cause and effect*." (emphasis added)).

**Prong three: Medically Acceptable Timeframe.**  For prong three's medically acceptable timeframe analysis, Ms. Zamora argues that Special Master Moran

incorrectly determined that Ms. Zamora's proffered expert evidence failed to establish a credible connection between her injury and the vaccination under *Althen*. *See* Pet.'s Mem. at 15–17.  This position is incorrect and a mischaracterization of Special Master Moran's decision.

Both petitioner and respondent's experts *agree* that "Ms. Zamora began suffering chronic fatigue syndrome months" prior to her influenza vaccination.  Decision at 17.  Indeed, Ms. Zamora's expert, Dr. Miglis, "places onset somewhere between October and December 2018"—a full year before her October 8, 2019, at-issue vaccination.  *Id.* at 2, 17.  Special Master Moran therefore correctly determined that the parties agree on the symptom onset window, and that window came long before Ms. Zamora's Flulaval dose.

Still, while a judicial conclusion where the parties agree is rarely arbitrary and capricious, Ms. Zamora maintains that her expert believes "that [an] acceptable window includes October of 2019," so Special Master Moran should have accepted that date over the 2018 onset window.  Pet.'s Mem. at 17.  Even assuming this position is correct, "a proximate temporal association alone does not suffice to show a causal link between the vaccination and the injury." *Grant*, 956 F.2d at 1148.  Rather, contemporaneous evidence of her condition is the gold standard to establish a medically acceptable timeframe for vaccine claims.  *E.g.*, *Moberly ex rel. Moberly v. Sec'y of Health & Hum. Servs.*, 592 F.3d 1315, 1323 (Fed. Cir. 2010).  For instance, in *Moberly*, the United States Court of Appeals for the Federal Circuit upheld a denial of causation under *Althen* prong three because no contemporaneous treating physician diagnosed a link between the claimant's symptoms and the vaccination itself.  *Id*.

The same is true here.  Ms. Zamora's physicians thought that she suffered from depression or a flat affect, not fatigue syndrome.  Decision at 4–5.  In fact, not a single physician diagnosed her with fatigue syndrome until almost a year after the at-issue influenza vaccination.  *Id.* at 4.  And even Dr. Casey's September 2020 diagnosis of chronic fatigue syndrome was in support of a disability application, not in search of whether a previous vaccination caused the current illness.  *Id.* at 5.  Like the Federal Circuit in *Moberly*, the Court finds this evidence to be too "speculative" to support Dr. Miglis's possible 2019 onset window.  *Moberly ex rel. Moberly*, 592 F.3d at 1323.  Special Masters are not required to take a petitioner's inconsistent opinions at face value. Nonetheless, because the parties agree on a pre-vaccination onset of symptoms anyway, the Court does "not find that determination to be arbitrary or capricious." *Id.* at 1324.

## VI

Litigants are reminded that appeals are not generally for lifting the curtain on a closed record; cases are to be proven at their proper juncture.  Ms. Zamora's chance was at the Office of Special Masters, and Special Master Moran correctly held her to all applicable standards.  The decision below, ECF No. 85, is **AFFIRMED**.  The Motion

for Review, ECF No. 87, is **DENIED**.  The Clerk of Court is directed to enter judgment accordingly.

    **IT IS SO ORDERED.**

                                              s/ *Loren A. Smith*

                                              Loren A. Smith,
                                              Senior Judge